IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 21, 2015

# STATE OF TENNESSEE v. DOMINIQUE RAMELL JARRETT

**Appeal from the Criminal Court for Hamilton County**
**No. 289916 Don W. Poole, Judge**

---

**No. E2014-02131-CCA-R3-CD – Filed July 27, 2015**

---

Appellant, Dominique Ramell Jarrett, entered a guilty plea to carjacking, a Class B felony, and received the agreed-upon sentence of eight years with the trial court to determine the manner of service. Following a sentencing hearing, the trial court denied all forms of alternative sentencing and ordered appellant to serve his sentence in the Tennessee Department of Correction. It is from this judgment that he now appeals. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Michael Lynn Acuff, Chattanooga, Tennessee, for the Appellant, Dominique Ramell Jarrett.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; M. Neal Pinkston, District Attorney General; and Cameron B. Williams, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

### A. Guilty Plea Submission Hearing

At the guilty plea submission hearing, the State proffered that on or about July 24, 2013, officers with the Chattanooga Police Department responded to the scene at 7200

Igou Gap Road and spoke with the victims Sara Camp and her boyfriend Christopher Stock. The victims had been traveling east in Ms. Camp's vehicle on Igou Gap Road when they noticed a young black male wearing a red shirt lying partially in a ditch in the roadway. They turned around to render aid to the person in the ditch, and when they exited the vehicle, three unknown assailants "rushed" the victims with pistols and carjacked them. All of the suspects fled in the vehicle, but Ms. Camp had an application on her iPhone that allowed her to locate her telephone, which she had left in the vehicle. Using that information, officers located her vehicle at 3518 Ridgeside Road, where they also arrested the suspects, including appellant, who had been involved. Ms. Camp's stolen property was returned to her.

Accordingly, appellant pleaded guilty to carjacking, a Class B felony, and the State dismissed the second count of the indictment, aggravated assault, a Class C felony. The plea agreement provided for an eight-year sentence with the trial court to determine the manner of service. The trial court accepted the agreed-upon length of sentence and set the remaining sentencing issues for a hearing.

### B. Sentencing Hearing

At the sentencing hearing, Ms. Camp testified and recounted the facts as set forth by the State at the plea submission hearing. She added that when they encountered the male in the ditch, he was lying down but that when they approached him, Mr. Stock assisted him in standing. When the other assailants attacked, Ms. Camp and Mr. Stock were attempting to walk the allegedly injured male to Ms. Camp's vehicle for the purpose of driving him to a hospital because he appeared to be injured. In addition, she stated that she was terrified at the time and that she was scared that the perpetrators were going to return for them. She recalled that because of the "Find My Phone" application on her iPhone, her vehicle was recovered within three and a half hours from the time it was stolen. Ms. Camp said that her vehicle had not necessarily been damaged but that it was "really, really dirty" when it was returned, that it smelled like marijuana, and that someone had thrown pills all across the backseat. She was not physically injured during the carjacking, but someone pointed a gun in her face. As a result of the attack, she felt that she had lost her peace of mind. On cross-examination, Ms. Camp acknowledged that she later learned that the guns that were used in the carjacking were not real weapons.

The State also called Mr. Stock as a witness, who added some details to Ms. Camp's testimony but whose recollection was substantially the same.

Appellant testified on his own behalf and stated that he pleaded guilty to the offense because he was, in fact, guilty. He participated in this scheme by lying in the ditch pretending to be hurt. He was seventeen years of age when he was involved in the carjacking, and he had been previously adjudicated delinquent in juvenile court for two

felony counts involving vehicle theft. One of those occasions involved theft of a vehicle and subsequent flight from a group home.

Appellant described himself as a good student. While in custody, he had worked toward obtaining his GED. He had not seen his mother in fourteen months because she was in poor physical condition, but he said that if the trial court released him, he planned to live with her and his twelve-year-old brother. Appellant stated that when he was arrested, his girlfriend was pregnant and that at the time of the sentencing hearing, he had a one-year-old child. He planned to get a job and care for his child, and his step-mother had arranged a job for him at McDonald's. Appellant said that during his incarceration, he attended church and received counseling.

On cross-examination, appellant agreed that he had violated the terms of juvenile probation seven times, most of which were based on his being unruly and running away from home. In addition to the two adjudications for theft of vehicles, he acknowledged an adjudication for fraudulent use of a debit card based on his use of his mother's debit card to purchase $4,000 worth of telephones. He admitted that he had smoked two or three "blunts" of marijuana a day from the time he was thirteen until he was sixteen years of age.

Appellant's mother, Ronica Scott, testified that appellant started getting into trouble when he was around twelve years of age, which was the time when his father came into his life. She believed that a great deal of the criminal behavior in which appellant had been involved, such as using her debit card, required the assistance of someone more knowledgeable, and she attributed that assistance to appellant's father. She acknowledged that many of appellant's probation violations were the result of her filing petitions in juvenile court based on his continued misbehavior. Ms. Scott described her health problems and said that when she took her pain medication and went to sleep, appellant would take her car and run away to his father's house. Despite his past behavior, she was willing to offer him another chance and allow him to live with her if the trial court suspended his eight-year sentence.

In issuing its ruling, in addition to considering all of the requisite factors, the trial court stated that it considered the testimony of the witnesses and noted in particular the testimony of Ms. Scott, who had tried to encourage appellant to follow the law to no avail. The trial court reviewed and considered the presentence report. It also considered the circumstances of the offense, noting that the nature of the conduct, lying in wait for a "good Samaritan to come forward and render aid," was "pretty shocking."

Appellant advanced the mitigating factor that he was young and lacked substantial judgment, *see* Tenn. Code. Ann. § 40-35-113(6), but the trial court gave no weight to that factor given appellant's extensive history in juvenile court. However, the trial court

attributed "some credit" under the catch-all provision to the fact that appellant had a "less than ideal childhood" with his father being in the penitentiary for much of the time and his mother being left to care for him and his siblings. *Id.* § 40-35-113(13). The trial court also gave appellant credit for accepting responsibility, pleading guilty, and apologizing to the victims. *Id.*

The trial court considered appellant's near-constant use of marijuana for three years as criminal behavior pursuant to Tennessee Code Annotated section 40-35-114(1). It also considered appellant's two juvenile adjudications that would have constituted felonies if they had been committed by an adult. *Id.* § 40-35-113(16). The trial court noted appellant's repeated failures to comply with the terms of a sentence involving release into the community. *Id.* § 40-35-113(8). Finally, the trial court opined that the possibilities of appellant's being rehabilitated were poor. *Id.*

The trial court ruled:

> When should the Court consider confinement when the sentence is 10 years or less? And that's set out in 40-35-103, [sub-part] B, to avoid depreciating the seriousness of the offense. And looking back at that, I do consider this is a reprehensible act. Setting out a situation such as this to carjack, I think is reprehensible. I think it's offensive. So I do think that applies and measures less restrictive than confinement have recently or frequently been applied unsuccessfully to the Defendant. So I do think those things are in favor of confinement.

The trial court then sentenced appellant to eight years in confinement. It is from this judgment that he now appeals.

## II. Analysis

Appellant argues that the trial court erred in denying him probation or any other form of alternative sentence. The State responds that the trial court's ruling was proper.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed

should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

We begin with the proposition that a defendant is eligible for probation if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). An especially mitigated or standard offender convicted of a Class C, D, or E felony is

considered to be a favorable candidate for probation in absence of evidence to the contrary. *See id.* § 40-35-102(6). "A court shall consider, but is not bound by, this advisory sentencing guideline." *Id*. The trial court must automatically consider probation as an alternative sentence for eligible defendants, but the defendant bears "the burden of establishing suitability for probation." *Id*. § 40-35-303(b). This burden includes demonstrating that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A trial court should base its decision regarding any sentence involving confinement on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the trial court should examine the defendant's potential for rehabilitation or lack thereof when determining whether an alternative sentence is appropriate. *Id.* § 40-35-103(5).

While appellant is eligible for probation because his sentence is less than ten years, he is not considered a favorable candidate because he pleaded guilty to a Class B felony. The trial court considered, as required by law, the circumstances of the offense, and found the crime "reprehensible." The trial court also noted appellant's juvenile record, which included two adjudications that would have constituted felony convictions if they had been committed by an adult and that notably were offenses involving thefts of vehicles. *See State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (stating that a sentencing court may consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 "as they are relevant to the sentences involving confinement"); *State v. Claude Ronnie Morrison*, No. E2000-02048-CCA-R3-CD, 2001 WL 881382, at *3 (Tenn. Crim. App. Aug. 7, 2001) (clarifying that enhancement and mitigating factors are appropriate considerations in determining both manner of service and length of sentence); Tenn. Code Ann. § 40-35-210(b). Appellant's social history, as outlined by the trial court, included almost daily use of marijuana, a

history of misbehavior that required intervention by the juvenile court, and a "less than ideal" childhood that involved incarceration of his father. As to deterrence, the trial court noted appellant's failed attempts to comply with the conditions of juvenile probation that resulted in seven probation violations.

Upon the record developed at the sentencing hearing and in light of the standard of review set forth in *Bise*, we cannot conclude that the trial court abused its discretion in denying appellant probation in this case. The record reflects that appellant had engaged in criminal behavior for nearly three years on a continuous basis by smoking marijuana almost daily; that appellant had two juvenile adjudications that would have constituted felonies if they had been committed by an adult; and that he had garnered seven probation violations in juvenile court. Based on the record, we agree with the trial court that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to appellant and that confinement is appropriate in this case.

We note that appellant also argues that the trial court erred in failing to grant him another form of alternative sentencing. Tennessee Code Annotated section 40-35-104 lists several forms of sentencing alternatives that may be employed by the trial court when imposing a sentence, such as: a suspended sentence upon a term of supervised probation; continuous or periodic confinement in conjunction with a term of probation, i.e., a "split" sentence; and a community-based alternative. Appellant requested and was denied probation. He had already served a period of fourteen months in the local jail; therefore, he was ineligible for an alternative sentence involving confinement in the local jail.

At the sentencing hearing, counsel for appellant clearly stated, "What we're asking from the court is probation." He did not seek any other alternative sentence, and he did not argue the applicability of the provisions of the community corrections act. Likewise, in his brief to this court, appellant does not assert his eligibility for community corrections; he simply argues that the trial court erred in not imposing an alternative sentence.

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure states that an appellant's brief shall contain the following with respect to an argument:

> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]

Tenn. R. App. P. 27(a)(7)(A)-(B). Moreover, Rule 10(b) of the Rules of the Court of Criminal Appeals reads, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this Court." Although appellant cited legal authority that is generally applicable to the issue of alternative sentencing, he failed to brief any other alternative sentence that could possibly be available in his particular circumstance. For this reason, we conclude that appellant has waived this issue on appeal.

## CONCLUSION

Based on the record as a whole, the briefs of the parties, and the applicable legal authorities, we affirm the judgment of the trial court.

____________________________________

ROGER A. PAGE, JUDGE